Marguerite Loretta Aldrich

*v.*

William T. Aldrich, *et al.*

(No. 12139)

Submitted April 24, 1962.        Decided July 6, 1962.

Rehearing Denied October 22, 1962.

270

Calhoun, President, dissenting.

*H. D. Rollins,* for appellant.

*Ernest H. Gilbert,* for appellee.

Haymond, Judge:

In this civil action instituted in the Circuit Court of Putnam County, in which the defendants are William T. Aldrich, son of M. S. Aldrich, deceased, Natalie Aldrich, wife of William T. Aldrich, M. S. Aldrich & Associates, Inc., Aldrich-Slicer Company, a corporation, assets in which corporations were formerly owned by M. S. Aldrich, and John C. White, Executor of the will of M. S. Aldrich, deceased, the plaintiff, Marguerite Loretta Aldrich, divorced wife of M. S. Aldrich, deceased, seeks to enforce the collection, against the estate of M. S. Aldrich, deceased, and certain property now owned by William T. Aldrich, and certain assets formerly owned by M. S. Aldrich and now held by William T. Aldrich, or M. S. Aldrich & Associates, Inc., or Aldrich-Slicer Company, of a certain decree for alimony at the rate of $215.00 per month awarded the plaintiff in a certain divorce suit formerly pending in the Circuit Court of Dade County, Florida. By final order entered August 2, 1961, the Circuit Court of Putnam County, upon the undisputed facts appearing in the pleadings, which consisted of the amended complaint of the plaintiff and its exhibits and the separate answers of each of the defendants, and in the stipulation of counsel, found that the defendants were entitled to judgment in their favor and rendered judgment of dismissal of the plaintiff's amended complaint, with prejudice, and awarded costs in favor of the de-

fendants. From that judgment this Court granted this appeal upon the petition of the plaintiff.

In a suit for divorce instituted by the plaintiff Marguerite Loretta Aldrich against her husband M. S. Aldrich in the Circuit Court of Dade County, Florida, by final decree entered June 1, 1945, that court granted the plaintiff Marguerite Loretta Aldrich an absolute divorce from her husband M. S. Aldrich. The divorce decree contained, among other provisions which are not here material, this provision concerning alimony for the wife: "That the defendant, Moriel Simeon Aldrich, be and he is hereby ordered and required to pay to the plaintiff, Marguerite Loretta Aldrich, the monthly sum of $250.00 as and for her permanent alimony, said sum to be paid to her monthly at the office of the Clerk of the Circuit Court at Miami, Dade County, Florida, and in the event the defendant, Moriel Simeon Aldrich shall predecease the plaintiff, Marguerite Loretta Aldrich, said monthly sum of $250.00 shall, upon the death of said defendant, become a charge upon his estate during her lifetime; and this Court retains jurisdiction in respect thereto; * * * ." By a subsequent decree in the same suit entered June 25, 1946, the amount of the alimony was reduced from the sum of $250.00 per month to the sum of $215.00 per month from and after that date. M. S. Aldrich paid the monthly award of $215.00 in full until his death, which occurred May 29, 1958. M. S. Aldrich, who was survived by his second wife, Angela Aldrich, died testate while a resident of Putnam County, and under his last will and testament, which was duly probated, his son, the defendant William T. Aldrich, and his second wife, Angela Aldrich, are the sole beneficiaries of his estate.

The defendant John C. White was named and has qualified as executor of the estate, which is now in process of administration, and the assets of the estate according to the appraisement filed with the amended complaint, consisting of personal property and a small undivided interest in real estate, amount to a total of $7,283.50, which is less than the amount of the unpaid alimony which has accrued under the divorce decree from the death of M. S. Aldrich to the date of the institution of this action.

M. S. Aldrich owned a parcel of land containing about ten acres in Putnam County which was conveyed to him by C. B. Hildreth. On April 22, 1942, he made a deed for that land to his son Edwin M. Aldrich, who at that time was under the age of twenty one years and a cadet at West Point. The plaintiff, as the wife of M. S. Aldrich, joined in and signed and acknowledged that deed. On November 15, 1946, Edwin M. Aldrich and Marge Taylor Aldrich, his wife, conveyed the same property to William T. Aldrich, another son of M. S. Aldrich and one of the defendants in this case. Notwithstanding these conveyances M. S. Aldrich continued to occupy this land as his home until his death. M. S. Aldrich, who owned assets in M. S. Aldrich & Associates, Inc. and Aldrich-Slicer Company, also transferred his interest and control in these corporations to his son William T. Aldrich.

The plaintiff charges that the conveyance by M. S. Aldrich in which she joined as his wife, to Edwin M. Aldrich, of the residence property of M. S. Aldrich was without consideration and that the transfer of assets in the two corporations which M. S. Aldrich formerly owned and controlled was also without consideration, and that the land and those assets, as well as the assets of the estate of M. S. Aldrich, are subject to the judgment of the Circuit Court of Dade County, Florida, for alimony which has accrued and which has been unpaid since the death of M. S. Aldrich.

The plaintiff contends that the judgment of the Circuit Court of Dade County, Florida, which awards the plaintiff alimony at the rate of $215.00 per month during her lifetime and which makes alimony which accrues after the death of M. S. Aldrich a charge upon his estate, is a valid judgment of another state and as such is entitled to full faith and credit in this state and is enforceable against the assets of the estate of M. S. Aldrich and the real estate and other assets formerly owned by him which have been transferred to and are now held by his son, the defendant William T. Aldrich.

On the contrary the defendants contend, in substance, that the Circuit Court of Dade County, Florida, was without jurisdiction to award alimony against the defendant M. S. Aldrich which would be valid and enforceable against his estate

after his death; that the decree of the Florida court is not enforceable in this action for the reason that it is contrary to the laws of this state and is not within the full faith and credit provisions of the Constitution of the United States and that, even if it should be held to be a valid judgment, it is not enforceable against the property and assets formerly held by M. S. Aldrich and now held by the defendant William T. Aldrich or M. S. Aldrich & Associates, Inc., or Aldrich-Slicer Company, for the reason that the claim of the plaintiff against such property and assets is barred by limitations.

The controlling question for decision is whether the judgment of the Circuit Court of Dade County, Florida, to the extent that it awards alimony to accrue after the death of M. S. Aldrich and makes the alimony so accruing a charge upon his estate, is a valid judgment which is entitled to full faith and credit in the courts of this state; for if such judgment is not entitled to such full faith and credit the question of its enforcibility against the property and assets formerly owned by M. S. Aldrich becomes unimportant and need not be considered or discussed.

This Court has held in many cases that under Article IV, Section 1, of the Constitution of the United States, a valid judgment of a court of another state is entitled to full faith and credit in the courts of this state. *Gavenda Brothers, Inc.* v. *Elkins Limestone Company, Inc.*, 145 W. Va. 732, 116 S. E. 2d 910; *Gardner* v. *Gardner*, 144 W. Va. 630, 110 S. E. 2d 495; *Consumers Credit Company of Waynesburg* v. *Bowers*, 143 W. Va. 748, 104 S. E. 2d 869; *Bennett* v. *Bennett*, 137 W. Va. 179, 70 S. E. 2d 894; *Paull* v. *Cook*, 135 W. Va. 833, 65 S. E. 2d 750; *Pukas* v. *Pukas*, 129 W. Va. 765, 42 S. E. 2d 11; *Perkins* v. *Hall*, 123 W. Va. 707, 17 S. E. 2d 795; *International Harvester Company of America* v. *Solazo*, 116 W. Va. 34, 178 S. E. 429; *Campbell* v. *Switzer*, 74 W. Va. 509, 82 S. E. 319; *Roller* v. *Murray*, 71 W. Va. 161, 76 S. E. 172, L.R.A. 1915F, 984, 32 Ann. Cas. 1914B, 1139; *Crumlish's Administrator* v. *Central Improvement Company*, 38 W. Va. 390, 18 S. E. 456, 23 L.R.A. 120, 45 Am. St. Rep. 872; *Stewart* v. *Stewart*, 27 W. Va. 167; *Gilchrist* v. *West Virginia Oil and*

*Oil Land Company,* 21 W. Va. 115, 45 Am. Rep. 555; *Coleman* v. *Waters,* 13 W. Va. 278. It is also well established that by virtue of the full faith and credit clause, Article IV, Section 1, of the Constitution of the United States a judgment of a court of another state has the same force and effect in this state as it has in the state in which it was pronounced. 2 Black on Judgments, second edition, 1902, Chapter 22, Section 861; 30A Am. Jur., Judgments, Section 237; *Campbell* v. *Switzer,* 74 W. Va. 509, 82 S. E. 319; *Roller* v. *Murray,* 71 W. Va. 161, 76 S. E. 172, L.R.A. 1915F, 984, 32 Ann. Cas. 1914B, 1139; *Wells-Stone Mercantile Company* v. *Truax,* 44 W. Va. 531, 29 S. E. 1006; *Crumlish's Administrator* v. *Central Improvement Company,* 38 W. Va. 390, 18 S. E, 456, 23 L.R.A. 120, 45 Am. St. Rep. 872; *Stewart* v. *Stewart,* 27 W. Va. 167; *Gilchrist* v. *West Virginia Oil and Oil Land Company,* 21 W. Va. 115, 45 Am. Rep. 555; *Black* v. *Smith,* 13 W. Va. 780; *Thompson* v. *Thompson,* 226 U. S. 551, 33 S. Ct. 129, 57 L. Ed. 347; *Barber* v. *Barber,* 62 U. S. (21 How.) 582, 16 L. Ed. 226; *Babcock* v. *Babcock,* 147 Misc. 900, 265 N.Y.S. 470; *Picker* v. *Vollenhover,* 206 Or. 45, 290 P. 2d 789; *Van Natta* v. *Van Natta,* Court of Civil Appeals of Texas, 200 S. W. 907.

In 2 Black on Judgments, second edition, 1902, Chapter 22, Section 861, discussing the effect to be given to a judgment of another state, the author quotes this language from *Wood* v. *Watkinson,* 17 Conn. 500, 44 Am. Dec. 562: " * * * it is well settled, that no greater effect is to be given to it than it would have in the state where it was rendered. It has no higher dignity in any other state than in the one where it was pronounced; and hence, if in the courts of the state where the judgment was rendered, it is inconclusive, or if it is inquirable into there, during a particular period, or on certain conditions, it will be open to investigation, to the same extent, every where else. * * * . It results conclusively from this principle, or is rather involved in it, that if a judgment in a state where it is recovered, has not the effect of binding personally the defendants, or any of them, in the suit in which it was rendered, no greater effect will be given to it in any other state where it is endeavoured to be enforced. It derives its obligation only from the laws of the

state in which it is pronounced." To maintain an action in one state on a foreign judgment or decree, it is necessary that the judgment or decree be a valid personal and final adjudication which is in full force and virtue in the jurisdiction where it was rendered and be capable of enforcement there by final process and the adjudication must have been rendered by a court which had jurisdiction of the parties and of the subject matter. 50 C.J.S., Judgments, Section 868. In an action on a judgment of another state the validity of the judgment is determined by the law of the jurisdiction in which the judgment was recovered. 50 C.J.S., Judgments, Section 869. A judgment rendered by a court of another state or by a court of this state is subject to attack for lack of jurisdiction to render such judgment or for fraud in its procurement. *Gavenda Brothers, Inc.* v. *Elkins Limestone Company, Inc.,* 145 W. Va. 732, 116 S. E. 2d 910; *Gardner* v. *Gardner,* 144 W. Va. 630, 110 S. E. 2d 495; *Bennett* v. *Bennett,* 137 W. Va. 179, 70 S. E. 2d 894; *Stephenson* v. *Ashburn,* 137 W. Va. 141, 70 S. E. 2d 585; *Cable* v. *Cable,* 132 W. Va. 620, 53 S. E. 2d 637; *Perkins* v. *Hall,* 123 W. Va. 707, 17 S. E. 2d 795; *Caswell* v. *Caswell,* 84 W. Va. 575, 100 S. E. 482; *Turner* v. *Stewart,* 51 W. Va. 493, 41 S. E. 924; *Gilchrist* v. *West Virginia Oil and Oil Land Company,* 21 W. Va. 115, 45 Am. Rep. 555.

When a judgment or decree of a court of another state is sought to be enforced in a court in this state, the court in this state may inquire into the jurisdiction of the court which rendered the judgment or decree, and if it appears that such court had no jurisdiction, the judgment or decree is void; but if it had jurisdiction, the judgment or decree is binding in this state. Point 3, syllabus, *Stewart* v. *Stewart,* 27 W. Va. 167; *Perkins* v. *Hall,* 123 W. Va. 707, 17 S. E. 2d 795; *Citizens National Bank* v. *Consolidated Glass Company,* 83 W. Va. 1, 97 S. E. 689; *Stewart* v. *Northern Assurance Company,* 45 W. Va. 734, 32 S. E. 218, 44 L.R.A. 101; *Gilchrist* v. *West Virginia Oil and Oil Land Company,* 21 W. Va. 115, 45 Am. Rep. 555; *Milliken* v. *Meyer, Administratrix,* 311 U. S. 457, 61 S. Ct. 339, 85 L. Ed. 278, 132 A.L.R. 1357, rehearing denied, 312 U. S. 712, 61 S. Ct. 548, 85 L. Ed. 1143; *Fauntleroy* v. *Lum,* 210 U. S. 230, 28 S. Ct. 641, 52 L. Ed. 1039;

*Simmons* v. *Saul*, 138 U. S. 439, 11 S. Ct. 369, 34 L. Ed. 1054; *Thompson* v. *Whitman*, 85 U. S. (18 Wall.) 457, 21 L. Ed. 897; *Kelley* v. *Kelley*, 161 Mass. 111, 36 N. E. 837; 30A, Am. Jur., Judgments, Section 261.

This Court has held in many cases that a void judgment, being a nullity, may be attacked collaterally, or directly, at any time and in any court whenever any claim or right is asserted under such judgment. *Gavenda Brothers, Inc.* v. *Elkins Limestone Company, Inc.*, 145 W. Va. 732, 116 S. E. 2d 910; *State ex rel. Cecil* v. *Knapp*, 143 W. Va. 896, 105 S. E. 2d 569; *State ex rel. Leeber and Covey* v. *The Board of Education of The County of Raleigh*, 143 W. Va. 584, 103 S. E. 2d 797; *State ex rel. Browning* v. *Tucker*, 142 W. Va. 830, 98 S. E. 2d 740; *State ex rel. Vance* v. *Arthur*, 142 W. Va. 737, 98 S. E. 2d 418; *State ex rel. Lovejoy* v. *Skeen*, 138 W. Va. 901, 78 S. E. 2d 456, certiorari denied, 349 U. S. 940, 75 S. Ct. 786, 99 L. Ed. 1268; *Bennett* v. *Bennett*, 137 W. Va. 179, 70 S. E. 2d 894; *Stephenson* v. *Ashburn*, 137 W. Va. 141, 70 S. E. 2d 585, and many other cases cited in the opinion in the *Gavenda Brothers* case.

In the light of the foregoing well established legal principles in considering whether the judgment, entered by the Circuit Court of Dade County, Florida, awarding alimony to extend beyond the death of M. S. Aldrich and making such alimony a charge against his estate, may be enforced in this state, it is necessary to determine whether those provisions of the judgment are valid under the law of the State of Florida.

In support of her contention that such decree is valid under the law of the State of Florida, the plaintiff cites and relies upon *Johnson* v. *Every*, Fla. 1957, 93 So. 2d 390. In that case the Circuit Court of Dade County, Florida, entered a decree of divorce in favor of the wife Beulah V. Johnson against her husband James Nelson Johnson. The decree awarded the wife the sum of twenty five dollars per week for her support and maintenance and provided that the payment of that amount should cease upon the death of the plaintiff or upon her remarriage to any person other than the defendant. Prior to the divorce proceedings the parties

had entered into a property settlement by which the husband agreed that the payments should only be terminated by the death of the wife or her remarriage to a person other than the husband. After the death of the husband the wife sought, in a proceeding against the administrator of the estate of the deceased former husband, to compel the payment of alimony in accordance with the decree of divorce. The Supreme Court of Florida in a four to three decision held that where under property settlement agreement and divorce decree it was provided that weekly payments to the wife were to be terminated only by the death of the wife or her remarriage to a person other than her husband, the husband's liability for such payments did not terminate at his death and that his estate was liable for such payments during the life of his former wife. The majority opinion in that case contains these paragraphs:

"We subscribe to the proposition that in the absence of an express contract or a provision in a decree such as the one before us, a divorced husband's liability for alimony terminates with his death. On the other hand, where the decree or property settlement agreement expressly provides for the continuance of the payments 'until the death of the wife' then the husband's estate remains liable for the obligation in the same manner as it is liable for any other legitimate obligation outstanding at the time of his death. Here there was a provision in the final decree as well as in the property settlement arrangement to the effect that the payments would be made during the life of the wife or until she remarried. She is still living and she has not remarried, and consequently, the conditions for the termination of the weekly payments have not occurred.

"This was in effect a part of our holding in *Underwood* v. *Underwood,* Fla. 1953, 64 So. 2d 281; and *Allen* v. *Allen,* 111 Fla. 733, 150 So. 237, 238. In the case last cited, we held: ' * * * As a general rule the obligation to pay alimony dies with the person, but agreements of the husband to bind his representatives to do this have been upheld, and there is no prohibition against them in this state. '

"The rule stated appears to be applicable to the situation in the case at bar."

It is clear from the majority opinion in the *Johnson* case, and particularly from the above quoted paragraphs, that the holding that the estate of the husband was liable for alimony accruing after his death and during the life of his former wife was based and depended entirely upon the agreement by which the husband incurred that obligation, and that in the absence of such agreement an award of alimony would not continue after but would terminate at the death of the husband. It is true that the court said " * * * in the absence of an express contract *or* a provision *in a decree such as the one before us,* a divorced husband's liability for alimony terminates with his death." (Italics supplied). Though this language is disjunctive in form, it is evident that the reference to the decree "such as the one before" the court meant a decree based upon a contract. Such meaning is also indicated by the quotation from *Allen* v. *Allen,* 111 Fla. 733, 150 So. 237, that "As a general rule the obligation to pay alimony dies with the person, but agreements of the husband to bind his representatives to do this have been upheld, and there is no prohibition against them in this state."; and by the statement that the rule stated in the immediately preceding quotation "appears to be applicable to the situation in the case at bar."

That the validity of the award of alimony to continue beyond the death of the husband in the *Johnson* case was based upon and resulted solely from the agreement is also indicated by the dissenting opinion of three of the justices who would have held the award invalid because it did not appear to them from the agreement between the parties that the parties intended the payments to extend beyond the death of the husband and to be binding upon his estate. The dissenting opinion contains, among others, these paragraphs:

"In the instant case, the agreement does not clearly disclose that the wife released a valuable property right nor that she had any special equity in her husband's business or property. Construing the language used in the agreement and the decree in accordance with its usual meaning,

it appears that the weekly payments were intended as 'alimony' in its strictest sense, meaning 'nourishment' or 'sustenance,' arising out of the husband's common law obligation to support his wife and child. Cf. *Jacobs* v. *Jacobs,* Fla. 1951, 50 So. 2d 169. This being so, we will not infer that the parties and the court intended the payments to extend beyond the death of the husband and to be binding upon his estate, as against the general rule that such payments cease upon his death."; and

"We do not decide, since the question is not presented, whether an award of this type of 'pure' alimony could be made by the court to extend beyond the lifetime of the husband, in the absence of an agreement of the parties to that effect. There is no statute in this state so providing; and it has been said that 'generally such power is considered as not existent, in the absence of any statute or agreement between the parties.' See the statement of the annotator in 39 A.L.R. 2d at page 1409, and cases cited."

The conclusion of this Court that the validity of the award of alimony as determined in the *Johnson* case was due to and was based solely upon the contract between the parties is also supported by the pronouncements of courts which have considered the effect of the decision in that case. In *Gessler* v. *Gessler,* 273 F. 2d 302, in giving effect to a separation agreement between the husband and the wife which by its express terms was binding upon the parties and their heirs, executors and administrators, and by which the husband provided for the support of his minor children and that payment for such support be made to their mother, and which contract was held to be valid and enforceable against the estate of the deceased husband, the United States Court of Appeals, Fifth Circuit, used this language: "The facts here are analogous to the facts in *Johnson* v. *Every,* Fla. 1957, 93 So. 2d 390. In that case there was a divorce and a property settlement agreement requiring the husband to make weekly payments to the wife to be terminated only by her death or remarriage. The court held that the husband's estate was liable for the payments in accordance with the separation agreement." A similar view of that case was expressed by the District Court of Appeal of Florida, Third District, in

*Deigaard* v. *Deigaard,* Fla. 1959, 114 So. 2d 516, a divorce suit in which a decree of the trial chancellor provided that if the defendant husband should die prior to the remarriage or the death of the wife, the wife should have a claim against the estate of the husband in the amount of $5,000.00 in lieu of post-demise alimony. In reversing and holding invalid that provision of the decree the District Court of Appeal said: "In addition, a divorced husband's liability for alimony generally terminates with his death. There was no expressed contract or agreement between the parties that alimony should continue beyond the life of the husband, and in the absence of statutory authority, we conclude that the decree in this respect is without legal basis. See *Allen* v. *Allen,* 111 Fla. 733, 150 So. 237; *Underwood* v. *Underwood,* Fla. 1953, 64 So. 2d 281; *Johnson* v. *Every,* Fla., 1957, 93 So. 2d 390."

In *Underwood* v. *Underwood,* Fla., 1953, 64 So. 2d 281, and *Allen* v. *Allen,* 111 Fla. 733, 150 So. 237, cited by the court in the *Johnson* case, an award to the wife to continue after the death of the husband as a liability of his estate was upheld by the court upon the basis of a property settlement agreement between the husband and the wife; and those cases indicate clearly that in the absence of an agreement an award of alimony would not be valid after the death of the husband. In the *Underwood* case the opinion contains this language: "At the very outset we dispose of the legal effect of the use of the word 'alimony' in the agreement and decree. It is not what it is *called* but what it *is* that fixes its legal status. It is the *substance* and not the *form* which is controlling. In the case of *International Trust Co.* v. *Liebhardt,* 111 Colo. 208, 139 P. 264, 147 A.L.R. 700, the court held that the use of the word *alimony* was not conclusive and that it was substance and not form which guided the court. So far as agreements of the kind under consideration is concerned, where periodic payments are to be made the wife for the period of her life and is not limited to the joint lives of the parties, the legal effect of such payments are that they constitute property settlements and not alimony. By its very nature, alimony is limited to the lifetime of the husband. See *Spear* v. *Spear,* 158 Md. 672, 149

A. 468, from which we quote with approval in *Vance* v. *Vance,* supra; *Emerson* v. *Emerson,* 120 Md. 584, 87 A. 1033; *Newbold* v. *Newbold,* 133 Md. 170, 104 A. 366; *Dickey* v. *Dickey,* 154 Md. 675, 141 A. 387, 58 A.L.R. 634; *North* v. *North,* 339 Mo. 1226, 100 S. W. 2d 582, 109 A.L.R. 1061. ". And in its opinion in the *Allen* case the court said: "For all the record shows, the agreement brought in question was of the latter class, and, if so, it may be enforced. As a general rule the obligation to pay alimony dies with the person, but agreements of the husband to bind his representatives to do this have been upheld, and there is no prohibition against them in this state. 19 C. J. §279, §635, page 279; *Storey* v. *Storey,* 125 Ill. 608, 18 N. E. 329, 1 L.R.A. 320, 8 Am. St. Rep. 417; *Miller* v. *Miller,* 64 Me. 484; *Barnes* v. *Klug,* 129 App. Div. 192, 113 N.Y.S. 325; *Fleming* v. *Peterson,* 167 Ill. 465, 47 N. E. 755; *Wilson* v. *Hinman,* 182 N. Y. 408, 75 N. E. 236, 2 L.R.A. (N.S.) 232, 108 Am. St. Rep. 820."

This Court has recognized an agreement by the husband to pay alimony during the life of the wife and has held that such payments extend beyond the death of the husband and are enforceable against his estate. *Jennings* v. *First National Bank of Williamson,* 116 W. Va. 409, 180 S. E. 772.

The principle is widely recognized by the decisions of many courts that the jurisdiction to entertain suits for divorce exists only by virtue of statute which confers such jurisdiction. In 27A, C.J.S., Divorce, Section 69, the text contains this language: "In general the power to grant a divorce is a statutory, and not a common-law, power, or, stated more broadly, jurisdiction of courts in divorce actions or proceedings is dependent on statute. A court has only such jurisdiction in divorce matters as the legislature has conferred or delegated by statute, and a power exercised by the court in such proceedings must be in the statute or it does not exist." In *McGowin* v. *McGowin,* 122 Fla. 394, 165 So. 274, the opinion contains these statements and citations: "The power to grant a divorce is a statutory and not a common-law power. 19 C. J. 23; *Martin* v. *Martin,* 173 Ala. 106, 55 So. 632; *Herron* v. *Passailaigue,* 92 Fla. 818, 110 So. 539, 542." See also *State ex rel. Cecil* v. *Knapp,* 143 W. Va. 896, 105 S. E. 2d 569.

The only provision of the statutes of Florida for the award of permanent alimony in a decree of divorce is Section 65.08, Fla. Stat. F.S.A., and is expressed in this language: "In any award of permanent alimony the court shall have jurisdiction to order periodic payments or payment in a lump sum." That statute does not authorize or empower a court of that state to award alimony to continue beyond the life of a husband. *Deigaard* v. *Deigaard*, Fla. 1959, 114 So. 2d 516.

In sections 2 and 3 of the Annotation in 39 A.L.R. 2d 1406, at pages 1408 and 1409, are these statements: "While there is little authority on the precise point, several cases indicate that, in the absence of any statute or agreement between the parties, the court has no power to extend alimony payments beyond the death of the person directed to pay."; and "The determination of whether the husband's death terminates his obligation to pay alimony to the divorced wife depends, first, upon whether the court has the power to provide in its decree that periodical payments for the support of the wife should continue despite the occurrence of such event. It would appear from the cases that generally such power is considered as not existent, in the absence of any statute or agreement between the parties."

In the divorce proceeding between the plaintiff and her husband M. S. Aldrich, the Circuit Court of Dade County, Florida, had jurisdiction of the subject matter of the controversy and of the parties and had the power to render a valid judgment dissolving the marriage between the parties, but, in the absence of any agreement between the parties, and there was no such agreement, that court did not have jurisdiction to award alimony to extend beyond the death of the husband and to make such alimony a charge against his estate. For that reason the judgment awarding such alimony was void and of no force and effect under the law of the State of Florida in which such judgment was rendered and will not be given full faith and credit in the courts of this state.

In *State ex rel. Vance* v. *Arthur*, 142 W. Va. 737, 98 S. E. 2d 418, this Court in its opinion quoted with approval this text from 11 Michie's Jurisprudence, Jurisdiction, Section 9:

"If the court exceeds its jurisdiction over the subject matter, its decrees are nullities to that extent and may be impeached directly or collaterally by any persons, anywhere, at any time, or in any manner, and may be declared void by every court in which they are called in question. Want of jurisdiction affirmatively appearing on the face of the proceedings makes the judgment even of courts of general jurisdiction null, and they may be so treated by any court in any proceeding, direct or collateral."

A judgment may be valid in part and void in part. *State ex rel. Browning* v. *Tucker,* 142 W. Va. 830, 98 S. E. 2d 740; 30A Am. Jur., Judgments, Section 20. "If the judgment is in excess of that which the court rendering it had by law the power to pronounce, such judgment is void for the excess only." *Ex parte Mooney,* 26 W. Va. 36, 53 Am. Rep. 59; *Dye* v. *Skeen,* 135 W. Va. 90, 62 S. E. 2d 681, 24 A.L.R. 2d 1234. In *Flaxman* v. *Flaxman,* 169 Okla. 65, 35 P. 2d 950, that court held that a decree granting a divorce and awarding alimony which the court was without power to award and enforce, was valid as to the divorce but void as to the alimony. See also *Oder* v. *Oder,* 149 Okla. 63, 299 P. 202. In *Ecton* v. *Tomlinson,* 278 Mo. 282, 212 S. W. 865, the court held that the jurisdiction of a court to award alimony being statutory, its judgment insofar as it awarded the wife specific personal property as alimony and extinguished her dower, was void. In the opinion that court said: "That the jurisdiction of courts in this state to hear and determine suits for divorce and alimony depends upon and is limited by the statutes is not now an open question. *Chapman* v. *Chapman,* 269 Mo. 663, 192 S. W. 448. Because of such limitations a court in an action for divorce cannot decree to a wife as a part or all of her alimony specific personal property of the husband. *Aylor* v. *Aylor,* 186 S. W. 1071. * * * . In an action for divorce where the court attempts to take into account, adjudicate and settle all questions of property rights, both present and inchoate, between the parties, it is not in so doing merely erroneously exercising jurisdiction; it is proceeding wholly without jurisdiction. It follows, therefore, that its judgment in such respect is void. * * * . It is necessary that a court have jurisdiction, not only of the parties and the

subject-matter, but it must also have jurisdiction to render the particular judgment in the particular case. *State ex rel. Muench,* 217 Mo. 124, 117 S. W. 25, 129 Am. St. Rep. 536; *Charles* v. *White,* 214 Mo. 187, 112 S. W. 545, 21 L.R.A. (N.S.) 481, 127 Am. St. Rep. 674." In *Edmondson* v. *Edmondson,* Mo. 1951, 242 S. W. 2d 730, the Kansas City Court of Appeals held that the court which granted a divorce and awarded alimony was without power to award installment payments to the wife for support and maintenance for the rest of her natural life regardless of marriage and to make them a charge upon the estate of the husband; that the portion of the judgment of divorce which purported to award alimony to the wife for the rest of her natural life was void; and that the validity of the remainder of the judgment dissolving the marriage was not affected.

Inasmuch as the judgment for alimony which has accrued since the death of M. S. Aldrich is not enforceable against his estate, the effect of the transfers of the property and assets formerly owned by him is not considered or discussed.

The judgment of the Circuit Court of Putnam County, being free from error, is affirmed.

*Affirmed.*

CALHOUN, PRESIDENT, dissenting:

I agree that the portion of the Florida decree which states that the alimony awarded shall "become a charge upon his estate during her lifetime" cannot have the effect of creating a "charge" in the sense of a lien, equitable or otherwise, upon the husband's real estate in this state. The decree was operative on the husband personally, but could not have the extra-territorial effect of creating a "charge" upon his real estate situated in West Virginia. *Wilson* v. *Braden,* 48 W. Va. 196, pt. 1 syl., 36 S. E. 367; *Woodcock* v. *Barrick and Yost,* 79 W. Va. 449, pt. 3 syl., 91 S. E. 396; *Tennant's Heirs* v. *Fretts,* 67 W. Va. 569, 571, 68 S. E. 387, 388; 50 C.J.S., Judgments, Section 889, page 485.

To the extent, however, that the majority opinion undertakes to determine the mere incorrectness of the Florida

court's judgment awarding alimony to be paid to the wife for her lifetime, I respectfully dissent.

Under Section 1, Article IV of the Constitution of the United States, a judgment of a court of another state must be accorded full faith and credit in the courts of this state. A judgment of a court of another state may be attacked in a court of this state only for fraud in its procurement or lack of jurisdiction in the court by which it was rendered. 50 C.J.S., Judgments, Section 889e, page 481. If there is any exception to the principles stated above, I have never learned of it, though such fundamental principles have been adherred to and reaffirmed by this Court until this time in cases almost without number, some of the more recent ones being as follows: *Gavenda Brothers Inc. v. Elkins Limestone Co.*, 145 W. Va. 732, 116 S. E. 2d 910; *Gardner v. Gardner*, 144 W. Va. 630, 110 S. E. 2d 495; *Consumer Credit Co. of Waynesburg v. Bowers*, 143 W. Va. 748, 104 S. E. 2d 869; *Bennett v. Bennett*, 137 W. Va. 179, 70 S. E. 2d 894; *Paull v. Cook*, 135 W. Va. 833, 65 S. E. 2d 750; *Pukas v. Pukas*, 129 W. Va. 765, 42 S. E. 2d 11; *Perkins v. Hall*, 123 W. Va. 707, 17 S. E. 2d 795.

The only way a judgment or decree of a court in another state may be assailed in a court of this state is by showing that it is void. *Pukas v. Pukas*, 129 W. Va. 765, 770, 42 S. E. 2d 11, 13. "The only escape from obedience to the rule that a judgment of a sister state is entitled to full faith and credit lies in a holding that the judgment is void and entiled to no standing even in the state in which its was rendered." 30A Am. Jur., Judgments, Section 246, page 314. That is to say, it must appear that, because of a lack of jurisdiction of the person or of the subject matter, "the judgment or decree was void." *Adkins v. Adkins*, 142 W. Va. 646, pt. 3 syl., 97 S. E. 2d 789. "The judgment of a sister state must be given full faith and credit unless it is absolutely void." 30A Am. Jur., Judgments, Section 246, page 314.

Courts of this state "may not refuse to enforce a judgment of another state because it involves some contravention of the public policy of this state." *Paull v. Cook*, 135 W. Va.

833, pt. 5 syl., 65 S. E. 2d 750. "The judgment or decree of a court of a sister state, having jurisdiction of the parties and the subject matter of suit, is *res judicata* as to all matters determined thereby. The parties are estopped by such final judgment or decree from again litigating the same matters in a court of this state." *R. D. Johnson Milling Co.* v. *Read,* 76 W. Va. 557, pt. 13 syl., 85 S. E. 726. "A decree relating to alimony, support or maintenance, entered in a court of another state having jurisdiction of the parties and subject matter, is entitled to full faith and credit in the courts of this State." *Bennett* v. *Bennett,* 137 W. Va. 179, pt. 7 syl., 70 S. E. 2d 894. "The faith and credit given is not to be niggardly but generous, full." *Johnson* v. *Muelberger,* 340 U. S. 581, 95 L. Ed. 552, 71 S. Ct. 474.

The purpose and effect of the full faith and credit clause "are to extend the res judicata effect of a judgment from the state of its rendition to all other states." 50 C.J.S., Judgments, Section 888b, page 469; 30A Am. Jur., Judgments, Section 236, page 304.

"Thus, under the full faith and credit clause of the Constitution of the United States, a judgment rendered by a court of one state is, in the courts of another state of the Union, binding and conclusive as to the merits adjudicated. It is improper to permit an alteration, modification or reexamination of the judgment, or of the grounds on which it is based, or of the merits of the original cause of action. Thus, jurisdiction to render the judgment having been established or being presumed, the full faith and credit clause precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles upon which the judgment is based. Whatever mistake of law may underlie a judgment, it is, under the full faith and credit clause, conclusive as to all the media concludendi." 30A Am. Jur., Judgments, Section 239, pages 307-08. See also *Stewart* v. *Northern Assurance Co.,* 45 W. Va. 734, pt. 1 syl., 32 S. E. 218, 44 L.R.A. 101; *Paull* v. *Cook,* 135 W. Va. 833, 841, 65 S. E. 2d 750, 755; *Dry* v. *Rice,* 147 Va. 331, 137 S. E. 473.

A judgment of a court of a sister state is binding and conclusive upon the courts of this state "not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto, and coming within the legitimate purview of the subject-matter of the action. * * * An erroneous ruling of the court will not prevent the matter from being *res judicata.*" *Sayre's Admr.* v. *Harpold,* 33 W. Va. 553, pt. 1 syl., 11 S. E. 16.

The decree or judgment of a Florida court must be accorded by the courts of this state the same binding effect on the parties thereto as in the state where rendered. If the matter is one which cannot be again litigated there, it cannot be reexamined, relitigated or modified by this or any other court of this state. *Stewart* v. *Stewart,* 27 W. Va. 167, pt. 4 syl. "An adjudication which precludes re-litigation of a question in the state in which it took place may be pleaded in bar in a subsequent suit in another state between the same parties and in which the same matter is involved and decisive of the issue." *Roller* v. *Murray,* 71 W. Va. 161, pt. 3 syl., 76 S. E. 172, L.R.A. 1915F 984, Ann. Cas. 1914B 1139, App. Dism., 234 U. S. 738, 58 L. Ed. 1570, 34 S. Ct. 902. The judgment of a sister state "must have the same faith and credit here, as it had in the state where it was rendered." *Gilchrist* v. *Oil and Oil Land Co.,* 21 W. Va. 115, pt. 1 syl. "It is well settled that the judgment of a sister state must be accorded in this state the same faith and credit which it has in the state where rendered." *Crumlish's Admr.* v. *Central Improvement Co.,* 38 W. Va. 390, pt. 5 syl., 18 S. E. 456, 23 L.R.A. 120, 45 Am. St. Rep. 872; *Wells-Stone Mercantile Co.* v. *Truax,* 44 W. Va. 531, pt. 1 syl., 29 S. E. 1006; 50 C.J.S., Judgments, Section 889b, page 473.

A judgment of a sister state may not be challenged on the ground "that the basis of the action was tainted with fraud. That matter is foreclosed by the judgment." Only fraud "in the procurement" of the judgment may be considered. *International Harvester Co.* v. *Solazo,* 116 W. Va. 34, pts. 4 and 5 syl., 178 S. E. 429.

If the court which rendered the foreign judgment is a court of general jurisdiction "the presumption is, it had jur-

isdiction of the particular case, and, to render the decree void, this presumption must be overcome by proof." *Stewart* v. *Stewart,* 27 W. Va. 167, pt. 6 syl. There is no such presumption in relation to judgments of inferior courts, such as justices of the peace, but such judgments are, nevertheless, entitled to full faith and credit in courts of all other states. 50 C.J.S., Judgments, Section 896, page 513.

Respectable authority appears to support the proposition that the full faith and credit clause will forbid one to question the jurisdiction of the court to render a judgment in a case in which he appeared and participated as a litigant. *Davis* v. *Davis,* 305 U. S. 32, 83 L. Ed. 26, 59 S. Ct. 3; *Morrissey* v. *Morrissey,* 1 N. J. 448, 64 A. 2d 209, 12 A.L.R. 2d 378.

The legal question presented herein must not be confused with our statutory provision that the writ of prohibition shall lie when the inferior court lacks jurisdiction of the subject matter in controversy, "or, having such jurisdiction, exceeds its legitimate powers." Code, 53-1-1. My research fails to disclose any authority for the proposition that this Court may refuse to give full faith and credit to the Florida judgment merely on the ground that that court, having jurisdiction, exceeded its legitimate powers. I believe all legal authorities leave the proposition unquestionable that it is not enough to show that the Florida judgment is merely erroneous or voidable. It must appear to be absolutely void, a nullity.

I believe also that the proposition is beyond question that, if the Florida court had jurisdiction of the person and of the subject matter, including jurisdiction to award alimony, its judgment cannot be assailed by this Court by reason of anything the Florida court did, however erroneous and without legal authorization, in the exercise of that jurisdiction. I find in this case no basis whatsoever for asserting that the Florida court lacked jurisdiction of either the person or of the subject matter. The contrary appears beyond question. That being true, the judgment of that court cannot be questioned in the absence of a showing that the judgment was procured by fraud, and there is no contention of that nature.

We must be careful not to confuse jurisdiction with an improper or erroneous exercise of jurisdiction. The Florida court had jurisdiction of the subject matter and the parties, including jurisdiction to determine and fix alimony. Jurisdiction to decide all matters pertaining to alimony included jurisdiction to decree rightly as well as wrongly, correctly as well as incorrectly, lawfully as well as unlawfully. "The test of a court's jurisdiction is whether or not it had power to enter on the inquiry, not whether its conclusion in the course thereof was correct, for the power to decide necessarily carries with it the power to decide wrongly as well as rightly." 21 C.J.S., Courts, Section 27, pages 38-39; *St. Lawrence Co.* v. *Holt and Mathews*, 51 W. Va. 352, 41 S. E. 351; *Stewart* v. *Tennant,* 52 W.Va. 559, pt. 8 syl., 44 S. E. 223; *Adkins* v. *Adkins,* 142 W. Va. 646, 97 S. E. 2d 789; 11 M.J., Jurisdiction, Section 10, page 436. "Where a court has lawfully acquired jurisdiction of the parties and the subject matter of the litigation, subsequent departure by the court from the rules of law or procedure in the exercise of that jurisdiction is not jurisdictional error." *Blankenship* v. *Mongini,* 105 W. Va. 530, pt. 2 syl., 143 S. E. 301.

I believe that the legal principles referred to herein establish the fact that the majority opinion, without warrant in law or precedent and contrary to basic legal and constitutional principles, arrogates to this Court the right to sit as a reviewing or appellate court in appraising and reexamining the mere correctness of the final judgment of a court of general jurisdiction in a sister state. The correctness of that judgment could not be collaterally challenged even in the State of Florida or in any other manner by any court, except by legally authorized appellate procedure, in the absence of a showing of fraud in the procurement of the judgment or lack of jurisdiction of the Florida court to pronounce it.

The decree pronounced by the Florida court is not contrary to the public policy of this state. I am not prepared to concede that the decree is erroneous either under the Florida law or the law of West Virginia. *Hale* v. *Hale,* 108 W. Va. 337, pt. 2 syl., 150 S. E. 748. If it is erroneous, void-

able, or in part unauthorized by law, that is a matter which an appropriate appellate court in Florida may determine; but this Court may not. But even if the decree were contrary to the public policy of West Virginia, this Court, in accordance with authorities previously cited herein, would be required to accord such decretal judgment full faith and credit.

It not correct to say, as does the majority opinion, that "jurisdiction" to grant alimony or support to a wife is dependent solely on divorce statutes. It is true that jurisdiction to grant a divorce is wholly a creature of statute and did not exist at common law. *State ex rel. Hammond* v. *Worrell,* 144 W. Va. 83, 106 S. E. 2d 521. The validity of the Florida divorce, however, is not in question. But on the contrary, courts of equity independently of statutes pertaining to alimony, separate maintenance or otherwise, have jurisdiction to entertain suits for alimony, separate maintenance, or to compel a husband to support his wife. Alimony is not a mere creature of statute. *Lieberman* v. *Lieberman,* 142 W. Va. 716, 724, 98 S. E. 2d 275, 281; *Snyder* v. *Lane,* 141 W. Va. 195, 89 S. E. 2d 607; *Davis* v. *Davis,* 137 W. Va. 213, 70 S. E. 2d 889; *Wolford* v. *Wolford,* 133 W. Va. 403, 56 S. E. 2d 614; *Dailey* v. *Brennan,* 123 W. Va. 261, 14 S. E. 2d 617. "A court of equity, independently of proceedings for divorce, on the ground of inadequate remedy at law, may decree maintenance to a wife who has been deserted by her husband." *Lang* v. *Lang,* 70 W. Va. 205, pt. 1 syl., 73 S. E. 716, 38 L.R.A. (N.S.) 950, which case was decided prior to the enactment of our statutes providing for suits for separate maintenance. "Alimony is not merely an incident of divorce; it is a substantive right, which may be decreed to any wife under a given state of facts. This inherited power of equity courts, independent of any statutes, still exists and may be enforced in a suit brought for that purpose alone." *White* v. *White,* 181 Va. 162, 168, 24 S. E. 2d 448, 451. See also *Bray* v. *Landergren,* 161 Va. 699, 172 S. E. 252; *Heflin* v. *Heflin,* 177 Va. 385, 14 S. E. 2d 317, 141 A.L.R. 391; *Wilson* v. *Wilson,* 178 Va. 427, 17 S. E. 2d 397. "According to the weight of authority, a court of equity has inherent jurisdiction, independent of any action for divorce and irrespective

of any statute, to entertain a suit by a wife for alimony or separate maintenance; * * *." 42 C.J.S., Husband and Wife, Section 614b, page 213.

The majority opinion undertakes to place its own construction not only on Florida statutes, but also upon the Florida trial court's and the Florida appellate court's construction of such statutes. The majority opinion omits to refer to the case of *Hale* v. *Hale*, 108 W. Va. 337, 150 S. E. 748, which was cited in counsel's brief and relied upon in oral argument. In that case, this Court decided that, by a proper construction of the divorce statutes of this state, a trial court may provide for alimony during the entire life of the wife, "to be paid to her through her life, that is, to be paid by the husband while living and out of his estate after his death, * * *." Is it the position of the majority opinion that a Florida court may reexamine a decree of that nature entered by a West Virginia trial court, and declare it void merely because the Florida court disagrees with the construction placed on decisions of this Court or West Virginia statutes by a trial court of this state?

The majority opinion cites various authorities from other jurisdictions involving legal principles similar to those presented in the case of *State ex rel. Hammond* v. *Worrell*, 144 W. Va. 83, 106 S. E. 2d 521. In that case the Court held that since suits for divorce exist only by virtue of statute, a court in such a suit may adjudicate only in relation to such matters as are authorized by statute; that such statutes of this state do not provide for jurisdiction to partition real estate in a divorce suit; and that a decree in a divorce suit which undertakes to partition real estate is void for lack of jurisdiction. But courts of Florida are given statutory authority or *jurisdiction in divorce suits to make adjudications pertaining to alimony.* Therefore, decisions of the type referred to are wholly lacking in pertinency. Here I repeat that which is so fundamental in law, including numerous prior decisions of this Court; that is, jurisdiction to adjudicate in relation to alimony or any other subject includes jurisdiction to decide or adjudicate rightly as well as wrongfully, cor-

rectly as well as incorrectly, lawfully as well as unlawfully. That is why appellate courts are established.

In my judgment, the majority opinion embodies a labored effort to justify a legally untenable proposition and represents a serious deviation from sound, well settled constitutional principles. I, therefore, respectfully dissent.